ARKANSAS BUILDING & LOAN ASS'N v. C. C. POTTENGER DRUG Co.

No. 2185, Okla. T.    Opinion Filed January 13, 1909.

(99 Pac. 635.)

BUILDING AND LOAN ASSOCIATIONS—Application—Withdrawal—Sufficiency. In a case where a written application for stock is made to a building and loan association, with the understanding and agreement that such stock is not to be issued or the money advanced to cover assessments and dues appropriated, unless a loan is granted in accordance with such application and correspondence conducted by such applicant direct with the association the verbal withdrawal or rescission of such application to the secretary of a local board of such association who is without authority in the premises, and which is not shown to have been communicated to his principal, is not sufficient to effect a rescission and entitle applicant to a return of the funds advanced and earned after allowance in accordance with the terms of the application.

(Syllabus by the Court.)

*Error from District Court, Pottawatomie County; M. C. Garber, Trial Judge..*

Action by the C. C. Pottenger Drug Company against the Arkansas Building & Loan Association. Judgment for plaintiff, and defendant brings error. Reversed.

*Flynn & Ames* and *R. A. Kleinschmidt,* for plaintiff in error.
*Blakeney & Maxey* and *Joe M. Adams, Jr.,* for defendant in error.

No briefs reached the reporter.

DUNN, J. This action was begun in the district court of Pottawatomie county by the C. C. Pottenger Drug Company, defendant in error, filing its petition, in which it prayed a judgment against the Arkansas Building & Loan Association perpetual, a foreign corporation, in the sum of $300 and costs. As a foundation for plaintiff's claim, it stated in its petition that in the month of February, 1903, being desirous of securing a loan of $10,000 from the defendant, it deposited with it the sum of $300 for the purpose of buying certain stock which was not to be used by the defendant except on the condition that the loan requested would be granted; that in the same month, the plaintiff not receiving any definite information relative to the said loan and the stock not having been issued, the plaintiff notified defendant by a letter addressed to it at Little Rock, Ark., which is the home office, not to issue the stock, but to return the $300 received by it. Plaintiff further averred that, notwithstanding the notice thus given, the defendant issued the plaintiff certain pretended shares of stock, and failed and refused to return plaintiff's money. Defendant filed an answer, the only portion of which insisted on in this court is embraced in a general denial. On the trial before a jury verdict was returned in favor of plaintiff, and judgment entered thereon, to secure a reversal of which defendant prosecuted proceedings in error in the Supreme Court of the Territory of Oklahoma, and the same now comes to us for our consideration by virtue of our succession to that court.

There is very little actual conflict in the material elements entering into this controversy. With the exception of one feature to be presently noticed and dealt with, the foundation of the rights of all the parties rests within certain written documents and letters which have been introduced and appeared in the record. It appears that in 1903 the Pottenger Drug Company, which will hereafter be denominated the "Drug Company," being desirous of erecting a business building in the city of Shawnee, applied to the defendant, the Arkansas Building & Loan Association, which will hereafter be dominated the "Loan Association," for a loan to enable it to build. There is no question but that it was to secure a loan of money that induced the Drug Company to enter into negotiations with the Loan Association, and not any intention on its part to purchase its stock as an investment. In pursuance of this understanding, the Drug Company, as appears from the documents, on the 9th day of February, 1903, signed the following application for a loan:

"Shawnee, Oklahoma, Feb. 9, 1903. To the President and Directors of the Arkansas Building and Loan Association, Perpetual, Little Rock, Arkansas—Gentlemen: The undersigned having heretofore entered into contract for the purchase of stock in the Arkansas Building and Loan Association, Perpetual, of Little Rock, Ark., 'separate and distinct from the contract here sought to be made,' and having purchased such stock under said contract, and having undertaken and agreed to pay dues thereon as prescribed by the by-laws of said association, and five cents per share as semiannual expense assessments, and to continue the payment of such monthly dues and semiannual expense assessment from the date of said stock to its maturity, which said monthly dues and semiannual expense assessments have been fully paid to this date, under and in pursuance of said contract and the by-laws of said association; and the undersigned, agreeing to continue said payments under said original contract, together with interest on such sum of money as may be advanced upon this application until the said stock shall arrive at par value, and otherwise to conform to the by-laws of the association as they now exist or may hereafter be altered, now hereby makes application to hypothecate and pledge 400 shares of the stock of said associa-

tion in Class A of Series No. ——— purchased as aforesaid, for an advance of money amounting to the sum of $10,000.00, said advance to be made in conformity to the rules and regulations of said association, and said stock to be cancelled and held for naught at the maturity thereof, and for the faithful performance of the contract to mature said stock and to perform all the obligations required by the rules and regulations of said association, and as additional security for the performance of said obligations, the undersigned offers a mortgage on the following described real estate, situated in the county of Pottawatomie, and Territory of Oklahoma, to wit: Lots 20 and 21, block 23, amended plat to the city of Shawnee."

Thereafter, and on the 10th day of February, 1903, it made the following application for stock in the Loan Association:

"Application for Stock. 280 Shares. Series No. 43. Class A. Certificate No. 5234. Dated April 15th, 1903. I. C. C. Pottenger Drug Company, of the town of Shawnee, Oklahoma Territory, do hereby subscribe for and make application to purchase 280 shares of installment stock in Class A, of the Arkansas Building and Loan Association, Perpetual, of Little Rock, Arkansas, and having paid the first month's dues and expense assessment, hereby agree to pay such monthly dues, semiannual expense assessments, fines and other charges thereon, as may be required by the by-laws of said association, until said shares of stock shall mature and arrive at the par value of $25.00 each. This subscription made and contract to be performed in conformity with the by-laws of said association as they now exist or may hereafter be altered. This 10 day of February, 1903. C. C. Pottenger Drug Company, Applicant.

"Agent's Remarks: Paid in full 3 months. G. M. Christner, Agent.

"Agents are not authorized to collect any money, except the first month's dues and expense assessment. All other payments to be made to local secretary or to home office. Agents have no authority to promise loans or state a time in which stock will mature. The contract between the Association, and its members is stated in the By-Laws of said Association, and agents have no authority to alter or amend such contract, or to make promises not in accordance with the same."

Thereafter, and on the 7th of April, 1903, the Drug Com-

pany made another application similar to this, with the exception that it was for 500 shares. G. M. Christner was secretary of the local board of the Loan Association, stationed at Shawnee. On April 1st the Drug Company wrote the Loan Association as follows:

"Mr. F. W. Christner has informed us that you have written him to the effect that you did not care to make us the loan of $10,000 on our building, which proposition Mr. Christner had previously informed us that you had accepted. We have let all our contracts on the strength of this and work has commenced on the building, and you will realize the position this places us in. We will not need much of the money for 60 or 90 days, and as the building can not be completed before 5 or 6 months, we would not make any heavy demands upon you. We are willing to pay as much as $300.00 per month on the contract as we are anxious to pay same out as soon as possible. We trust you will reconsider this and make us the loan, as we beg to assure you the facts are as stated above. We feel that if you did not want our loan the time to have declined same was when we made application, not after we had been notified of your acceptance, and have let over $14,000 worth of contracts. Trusting to hear from you soon, we remain," etc.

To this letter the Loan Association on April 9, 1903, answered as follows:

"We have delayed answering your esteemed favor of the 1st inst., with the hope that we might see our way clear to make the loan you desire. But find it impossible to do so without disappointing others to whom stock has been issued and whose applications have been granted. Your application has never been accepted, but instead the check which Mr. Christner sent us in payment of dues on the stock which you proposed to purchase has been twice returned to him and our reasons given for so doing. We do not want to take your money without giving you the accommodations desired, for it is not our purpose to disappoint people under any circumstances. We enclose copies of letters written Mr. Christner upon the subject, which will fully explain our position. An application is never accepted or a loan promised until the application is approved by our board of directors. At the time of our letter of Feb. 12th, was written Mr. Christner it seemed probable that one or two large loans previously figured on

would not have to be made, and if such proved to be a fact it was our desire to then consider your application, but it soon developed that we would be unable to take care of your loan on account of the large number of loans on hand, and therefore we returned the check to Mr. Christner and did not issue the stock."

On the 15th of April, 1903, the Loan Association again wrote to the Drug Company in reference to the same matter as follows:

"There has been a turn in affairs which we think will enable us to make the $10,000 loan you desire, provided the individual members of your company will endorse the note. But you must not consider this as a promise that the loan will be made, for the application will first have to be passed upon by the board of directors. We, however, do not want to issue the stock, nor submit the application to the board, without first knowing that you have not made other arrangements and that you still desire to borrow the money from us. We understand that $3,000 of stock is to be transferred to you by Mr. Christner. If this is a fact the transfer will have to be made before papers can be drawn if the application is granted by the board. Now, if this deal is to go through there will have to be a meeting of your board of directors and a resolution passed approving the action of the president in subscribing for 400 shares, $10,000 of our stock, and making application to us in the name of the drug company for an advancement of $10,000 thereon. There will also have to be a resolution passed authorizing the president and secretary to borrow $10,000 from us on said stock, with which to assist in the erection of the proposed building, and to execute a mortgage on lots 20 and 21, in block 23, amended plat to the city of Shawnee, in the county of Pottawatomie, in the Territory of Oklahoma, to secure the payment of the sum borrowed. Also authorizing them to execute a bond and such other papers as may be required. A certified copy of the proceedings must be made, giving date and the name of the directors present, also showing a quorum, and the same transmitted with the abstract. These resolutions and all the proceedings connected therewith will have to be in legal form in order to pass the keen eye of our attorney, and we would therefore advise that you have your attorney draw the resolution and supervise the whole transaction. Kindly forthwith advise us as to your wishes in the matter."

In answer to this letter the Drug Company on the 17th of April, 1903, wrote as follows:

"We have your letter of the 15th and note what you say in regard to making our loan. In reply will say that we do not object to any of the requirements of your company, but before we go any further we want to know if you will make the loan when we conform with same. We have already commenced work on our building and we do not want to put in the entire summer waiting for you to tell us what you will do, and before we go any further we want to know if you will do business when we conform with your requirements as stated in your letter. Awaiting your reply, we remain," etc.

Four days thereafter, and on April 21, 1903, the Loan Association wrote the Drug Company in answer to this letter as follows:

"We would state in answer to your favor of the 17th inst., that we have decided definitely to make the loan you desire, provided of course that your title is approved by our attorneys. And if this is satisfactory we would be glad to have you forward the abstract to Messrs. Howard & Ames, Oklahoma City, at once, for we desire to close the matter up forthwith. Have your secretary forward us a certified list of your stockholders, all of whom you understand will be required to endorse the note. We have written Mr. Christner fully concerning stock, and presuming that he will at once have an interview with you, think it unnecessary to also write you upon the same subject. Please act promptly so that the matter can be disposed of quickly."

The uncontradicted evidence, then, is that the money and stock were placed at the disposal of the Drug Company by the Loan Association to be taken up on compliance of the Drug Company with the terms mentioned, the evidence being that the board of directors informally and prior to the regular meeting of the 29th of April consented to make the loan and approved the same at their regular meeting on the day last mentioned ratifying the action of its secretary in announcing to the Drug Company the allowance of its application for a loan. The Drug Company, however, refused to accept the money or close the loan, insisting that they had by verbal notice to Christner, the secretary of the local

board of the Loan Association, withdrawn their application for the same on the 20th of April, the day before its acceptance by the Loan Association, and it appears from a letter of the Drug Company written to the Loan Association, wherein a request was made for the return of the funds deposited, that while the application for stock and a loan were pending and during the time of the correspondence going on between the Drug Company and the Loan Association in reference thereto the Drug Company prior to receiving any assurance that the Loan Association would make it a loan had made arrangements with another company, and that this was the reason of its refusal to close the transaction. The Drug Company on the trial sought to show that on the 23d day of April, 1903, it wrote a letter to the Loan Association, a copy of which it sought to introduce for the purpose of showing a withdrawal of its offer. The Drug Company were unable to furnish the original of this letter, and the Loan Association denied ever having received it. We think, however, that it is reasonably clear and virtually undenied that the letter of the Loan Association of the 21st of April was received by the Drug Company before the writing of its letter of the 23d day of the same month.

In view of the mutual acceptance of the different proposals on the part of the parties and the offer of the Loan Association to carry its part of the contract into effect, and the refusal of the Drug Company to accept the loan and stock, there is raised for our consideration the question: Did the court err in admitting the evidence showing that the Drug Company verbally notified the secretary of the local board, Christner, on or about the 20th of April, 1903, that it did not desire the loan, and could the written application made to the home office be rescinded by such notice? This presents the question of the authority of this local officer, and in determining this it will be necessary in conjunction therewith to consider the course of dealing between the principals involved. The application which is the foundation of the relationship between these parties contains an agreement showing the obligation entered into by the Drug Company to be in accordance

with the by-laws of the Loan Association, and contains this specific statement: "This subscription made and contract to be performed in conformity with the by-laws of said association as they now exist or may hereafter be altered." Furthermore, it will be noted that there appears on its face the notice to the parties signing it that "the contract between the association and its members is stated in the by-laws of said association, and agents have no authority to alter or amend such contract, or to make promises not in accordance with the same." It will thus be seen that the application signed by the plaintiff did not, in fact, contain the terms and the agreement entered into between the parties, but that the by-laws of the Loan Association themselves set forth and stated the contract. It was furthermore testified and undenied that the Drug Company was apprised of the contents of the by-laws, and in our judgment there was no error in the court permitting to be introduced in evidence a copy of the same under the pleadings as framed, for in fact the by-laws of the Loan Association contained the contract which plaintiff by its pleading offered to enter into by signing and delivery to the Loan Association its several applications for stock. It is a familiar rule of law that a principal may endow an agent with just such authority as he chooses, and that the acts of an agent without the apparent scope of such authority except where estoppel, waiver, or subsequent ratification by the principal are involved will not be binding as against such principal. Especially is this true where the action of the agent, as in this case the acceptance of a notice of rescission or withdrawal, is not shown to have been communicated to the principal at all, or until after he has acted affirmatively on the proposal involved. The duties of the secretary of the local board are set forth in the by-laws as follows:

"The local secretaries shall collect the dues, interest, premium, fines, expenses, assessments, etc., and keep a correct account of the same and remit monthly to the secretary at the general office."

The plaintiff had further notice of the limitations upon the

power of agents by the proviso of the by-laws that "representations by any agent of this association, not warranted by these by-laws or the charter, shall not be binding upon the association."

The foregoing apparently covers the full duties, and sets out the limitations of the secretary of the local board, so far as they are concerned in this controversy. Now, taking into consideration the powers thus vested by the Loan Association, and in view of the fact that the association does not ratify but specifically repudiates the existence of any power to accept notice of rescission by the local secretary, and there being no general course of conduct or action on the part of the Loan Association or anything else shown to take the case out of the general rule, we conclude in view of the application of the Drug Company and its correspondence with the home office of the Loan Association, and the dealing by the Loan Association direct with the Drug Company in the matter of the granting of the loan, that any such verbal notice as plaintiff contends was given to the secretary of the local board would not of itself be notice to or bind the Loan Association, and that when it in pursuance of the letter of the Drug Company, dated April 17, 1903, did on April 21, 1903, finally accept and offer to make the loan in accordance with the understanding of the parties, there was then created a binding contract between the parties, and the plaintiff was liable for the dues and assessments in accordance therewith.

There is no merit in counsel's contention that the acceptance on the part of the Loan Association was not in accordance with the offer on the part of the Drug Company. The correspondence in our judgment clearly demonstrates the correctness of this holding.

There is really but one question presented by the entire controversy, and this is whether or not there was in fact a contract entered into. In our judgment the correspondence and the documents determine this in the affirmative. The offer by the plaintiff of evidence showing that the Drug Company endeavored to rescind its action by the verbal notice to the local secretary was

evidently an afterthought, as reliance was not placed upon any such withdrawal at the time of the bringing of the action. Plaintiff's petition avers that this rescission took place by a letter written on the —— day of February, 1903, directed to its (the Loan Association) home office in Little Rock, Ark. On the trial of the cause no such letter was shown, but an offer was made to show that on the 23d day of April, 1903, it had written a letter purporting to respond to these allegations, but it was not able to establish it, and the defendant disavowed having received the same.

Under the facts found we therefore hold the admission of the attempted oral rescission was error. It is our judgment that the decision of the district court should be reversed, and a new trial granted as prayed for.

All the Justices concur.